IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHMUL KAPLAN ET AL.,               :     CIVIL ACTION
                                   :     NO. 06-5304
          Plaintiffs,              :
                                   :
     v.                            :
                                   :
                                   :
MICHAEL CHERTOFF ET AL,            :
                                   :
          Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         JANUARY 24, 2008


        Post-September 11, 2001, United States immigration
policy has been buffeted by two independent forces.  One, a large
increase in the number of persons seeking entry (legally or
illegally) into the United States.  Two, the need for increased
security precautions to prevent further terrorist attacks.  The
confluence of these developments has resulted in the need for the
immigration authorities to conduct more thorough background
checks for an increased number of persons.  Regrettably, because
of lack of resources, or inefficiency, or a combination of these
and other factors, a backlog has developed of applications for
citizenship and adjustment of status, which the immigration
authorities are unable to process on a timely basis.

        The backlog means that many applicants wait months or
even years before any action is taken on their applications.  The

backlog has spawned litigation across the country, with mixed results, leading one federal judge to call for a comprehensive administrative solution rather than piecemeal litigation that simply moves one applicant who has filed suit to the head of the line at the expense of another who has not.  See Mocanu v. Mueller, No. 07-445, 2008 WL 154606, at *4-5 (E.D. Pa. Jan. 11, 2008) (Baylson, J.).

The instant case addresses the vicissitudes of one subset of recent arrivals, i.e., a class of approximately 50,000 non-United States citizens who Congress has decided are entitled to receive social security benefits for a certain period of time. However, because of the delay in processing their applications for citizenship or adjustment of status by the United States Citizenship and Immigration Service ("USCIS"), they have been denied, or will be denied, such benefits.

The parties to the case have now reached an amicable settlement.  The proposed settlement agreement offers a creative solution to a difficult administrative problem.  Rather than putting any one person at the head of the line through the fortuity of litigation, it supplies a process that balances the Government's need to conduct thorough security background checks of the applicants with the applicants' rights not to be confined indefinitely to a legal limbo.

The settlement provides relief to members of the class

who have lost or will lose their SSI benefits because of delays in the processing of their applications by USCIS.  Under its terms, applications by class members will be expedited on a rolling basis based on the date an applicant will lose SSI benefits and the amount of time an applicant has already been waiting.  In addition to providing relief to the individual class members according to a rational set of principles, the settlement will also allow USCIS and the other agencies involved to focus on the important task of processing applications, rather than spending time litigating the claims of the class members on an individual basis.

Following a hearing on January 18, 2008, the Court has determined that the class satisfies the certification requirements of Rule 23 and is likely to gain final approval under Rule 23(e).  Therefore, the Court will conditionally certify the class for settlement purposes only and will order that notice of the proposed settlement and the fairness hearing be given to the class members.  The Court will approve the notice proposed by the parties and the proposed method of distributing that notice.

I.   BACKGROUND

    A.   <u>Facts</u>[1]

        Although non-citizens are generally not eligible for Supplemental Security Income ("SSI"), Congress has created a number of exceptions to this rule, including exceptions for refugees, asylees, Amerasians, and Cuban or Haitian immigrants.[2] Each of these groups is eligible for benefits for seven years, starting either at the time of entry into the country or at the time the individual is granted protected status as a member of one of the listed groups.  If an individual receiving benefits is naturalized before the expiration of his seven-year eligibility period, the individual may continue receiving benefits on the same basis as any other American citizen.  If the individual is not naturalized, benefits are terminated after seven years.

        In order to become naturalized, immigrants in the

---

[1]    The facts of this case are laid out in detail in the Court's Memorandum of March 29, 2007.  <u>Kaplan v. Chertoff</u>, 481 F. Supp. 2d 370 (E.D. Pa. 2007).  Therefore, only a brief summary is provided here.

[2]    For a variety of policy reasons, Congress has made certain groups of non-citizens eligible for social security benefits.  8 U.S.C. § 1612(a)(2)(A).  For example, refugees and asylees, admitted pursuant to 8 U.S.C. §§ 1157 and 1158 respectively, are eligible for benefits.  § 1612(a)(2)(A)(i), (ii).  Amerasians, defined as individuals fathered abroad by U.S. servicemen to women of Asians nationalities during World War II or the Korean War, are also eligible for benefits. § 1612(a)(2)(v); <u>see</u> 8 C.F.R. § 204.4 (defining "Amerasian"). Finally, individuals granted status as Cuban or Haitian entrants pursuant to Section 501(e) of the Refugee Education Assistance Act of 1980 are eligible for benefits.  § 1612(a)(2)(iv).

-4-

proposed class undertake a two-step process.  First, one must
gain legal permanent residency ("LPR").  Proposed class members
are either admitted with LPR status (Amerasians, for example, are
legal permanent residents when admitted) or may apply for LPR
status after a certain period of time (for example, refugees may
apply for LPR status after residing in the U.S. as refugees for
one year; asylees may apply one year after a final grant of
asylum status).

        Second, an immigrant with LPR status must apply for
naturalization.  This application cannot be made until four years
and nine months after the effective date for the immigrant's LPR
status.  The effect of this waiting period is different for
different classes of immigrants because the effective date for
LPR status is calculated differently for different classes.  For
example, when a refugee is granted LPR status, the effective date
is backdated to the date of entry into the United States.
Similarly, an Amerasian is admitted to the country with LPR
status.  Thus, a member of one of these two groups may apply for
naturalization four years and nine months after entry.  On the
other hand, the effective date for asylees is backdated to no
more than one year before the grant of LPR status.  Thus, if an
asylee receives LPR status three years after entering the
country, the effective date will be two years after the asylee's
entry.  The asylee calculates the waiting period from that

-5-

effective date and may apply for naturalization six years and
nine months after entry into the country.

      USCIS is the government agency charged with
administering the immigration laws, including processing and
adjudicating applications for LPR and naturalization.  As part of
the processing of an application, a background check of the
applicant is completed.  USCIS submits names and fingerprints to
the FBI so that the background check can be completed.  The
naturalization process cannot be completed without notification
from the FBI that the background check is complete.

      This case arose because of the significant and well-
known backlog in the processing of applications for LPR and
naturalization.  This backlog manifests itself in delays in
processing by USCIS and in delayed responses from the FBI to
requests for background checks.  Immigrants who diligently pursue
citizenship upon arrival find themselves unable to complete the
process within seven years and therefore lose SSI benefits while
their applications are still pending.

      USCIS has adopted Policy Memorandum No. 22 ("Memorandum
22"), which provides that the application of an immigrant facing
"emergent circumstances" may receive expedited processing.  This
policy is a departure from USCIS's usual practice of processing
applications in chronological order, in other words, on a first-
come, first-served basis.  "Emergent circumstances" include the

loss or threatened loss of SSI benefits because of the seven-year time limit on benefit eligibility.

Plaintiffs claim that USCIS has failed to apply Memorandum 22 in an evenhanded manner.  Some USCIS offices are known to provide expedited processing while others appear to ignore the requirements of Memorandum 22.  Plaintiffs argue that Memorandum 22 is applied arbitrarily in violation of the Equal Protection Clause.  They also claim that the delays in processing by USCIS and the FBI are unreasonable and violate the Administrative Procedure Act ("APA").

B.   Procedural History

The First Amended Complaint asserted four claims: a due process claim against the Social Security Administration ("SSA"); an equal protection claim against USCIS; and claims under the APA against USCIS and the FBI.  On March 29, 2007, the Court granted defendants' motion to dismiss as to the due process claim, leaving only the equal protection and APA claims.

The plaintiffs' equal protection claim is that USCIS intentionally discriminates among aliens either through "USCIS officers in different offices making intentional decisions whether to implement Memorandum 22 or, alternatively, [by] USCIS intentionally allowing some offices to implement Memorandum 22 while others ignore it."  Chertoff v. Kaplan, 481 F. Supp. 2d

-7-

370, 396 (E.D. Pa. 2007).  Because, at the pleading stage, USCIS offered no explanation for this discrimination, the Court held that the Complaint sufficiently alleged "intentional, unequal, and arbitrary application of the expedition policy" in violation of the Equal Protection Clause.  Id. at 398.

The plaintiffs' claim under the APA is that both USCIS and the FBI have unreasonably delayed the processing of their applications for LPR status and naturalization.  Because the Court held that each agency has a "mandatory, non-discretionary obligation" to act on applications or requests for background checks "within a reasonable amount of time," the lengthy delays alleged in the Complaint sufficiently state a cause of action under the APA.  Id. at 399, 401.


II.  MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The motion for preliminary approval requires the Court to determine, first, whether the proposed class should be conditionally certified and, second, whether the proposed settlement appears sufficiently likely to warrant final approval to justify giving notice to members of the proposed class

In considering whether to conditionally certify the class, the Court must consider whether the proposed class meets the four requirements of Rule 23(a) and one of the three requirements of Rule 23(b).  In re Gen. Motors Corp. Pick-Up

Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 794-95 (3d Cir. 1995) ("In re G.M."); Fry v. Hayt, Hayt, & Landau, 198 F.R.D. 461, 467-69 (E.D. Pa. 2000).

If conditional certification is granted, the Court will proceed to the question of preliminary approval.

> "[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the [C]ourt [will] direct that . . . notice be given to the class members of a formal fairness hearing."

Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001).  At this hearing, the Court will consider whether the proposed settlement meets the requirements of Rule 23(e), applying the nine factors enumerated in Girsh v. Jepson to "structure the[] final decision[] to approve [a] settlement[] as fair, reasonable, and adequate."  In re G.M., 55 F.3d at 785 (citing Girsh, 521 F.2d 153 (3d Cir. 1975)).  "Only when the settlement is about to be finally approved does the court formally certify the class, thus binding the interests of its members by the settlement."  Id. at 777-78.

Because the Court concludes that conditional certification is appropriate under Rule 23(b)(2) and that the settlement appears likely to receive final approval under Rule 23(e), the Court will grant conditional certification and

preliminary approval of the settlement.  The Court will schedule a fairness hearing and order that notice be distributed to class members.

    A.   <u>Terms of the Settlement</u>

        1.   <u>Definition of the class</u>

The settlement proposes to bind a class composed of

> all non-United States citizens who are receiving or have received Supplemental Security Income ("SSI") and are or will be subject to termination or suspension of SSI pursuant to 8 U.S.C. § 1612(a)(2)(A), prior to a decision on their current or future Application for Naturalization, Form N-400, and oath ceremony to become a United States citizen.  The Class ceases to exist, and all membership in the Class ends, upon the termination of this Stipulation pursuant to paragraph 54.

Settlement Agreement ¶ 2, Attachment A, Joint Mot. for Prelim. Approval, Jan. 4, 2008 (doc. no. 71) ("Stipulation" or "Stip.").

        2.   <u>Release of claims</u>

Under the Stipulation, class members forever release all "Settled Claims."  Stip. ¶ 12.  "Settled claims" are defined as

> "any and all actions, in law or equity, that were asserted or could have been asserted by Class Members or anyone acting on behalf of or in place of a Class Member, based upon the facts alleged or that could have been alleged in the Amended Complaint relating to the subject of this action, including but not

-10-

> limited to the Due Process, Equal
> Protection, and APA claims."

Id. ¶ 10. Individual actions against USCIS under 8 U.S.C. §

1447(b)[3] and individual actions against SSA under 42 U.S.C. §

405(g)[4] are excepted from the claims released in the Agreement.

Id.

While the Stipulation provides for a broad release from

which only two types of claims are exempt, the release is limited

in time. Like the rest of the Stipulation, it expires two years

and eleven months after the Stipulation's effective date.

Thus, a class member with an application pending with USCIS on

the termination date ceases to be a class member as of the

termination date. That person is no longer barred from bringing

a claim if the processing of his or her application continues to

be delayed.[5]

---

[3]    Section 1447(b) allows an applicant for citizenship to
challenge delay at a specific point in the application process.
When processing an application for citizenship, USCIS is required
to conduct an examination, similar to a judicial hearing, of the
application.  8 U.S.C. § 1446.  If USCIS fails to act on the
application within 120 days of the examination, Section 1447(b)
authorizes the applicant to bring suit in the district court for
the district in which the applicant resides.

[4]    Section 405(g) provides for judicial review of final
decisions by the Commissioner of Social Security.

[5]    Paragraph 54 of the Stipulation provides that all
obligations under the Stipulation cease on the Termination Date;
paragraph 2 provides that class membership ceases on that date as
well.  However, at the preliminary approval hearing, counsel for
the Government explained to the Court that, under the USCIS
system, an application marked for expedited treatment will

3.   <u>Benefits to Class Members</u>

In exchange for the release of claims, USCIS agrees to institute procedures for the expedited processing of all class members' applications for LPR and naturalization during the existence of the Stipulation.[6]  Stip. ¶ 15.  Any class member who has applied for LPR or naturalization may request expedited processing.  <u>Id.</u> ¶ 16.  The Agreement provides multiple methods for submitting the request.[7]  <u>Id.</u> ¶ 17.  If the application has been pending for six months or longer, USCIS will grant expedited processing.  <u>Id.</u> ¶ 16.  If the application has been pending for less than six months, USCIS will consider the request when the

---

continue to receive expedited treatment until its processing is complete.  Preliminary Approval Hr'g Tr. 5:4-11, Jan. 18, 2008 ("1/18/08 Hrg. Tr.").  In other words, as of the Termination Date, any applications that have already qualified for expedited processing will receive expedited processing even after the Stipulation expires.  <u>Id.</u>  On the other hand, the Government will have no obligation to grant any requests for expedited treatment that are made after the Termination Date.  <u>Id.</u> 4:14-17.

[6]   Expedited processing means that USCIS will "(i) provide and/or request priority action on any pending or future security checks for the current application; (ii) provide priority action on any internal processing at USCIS; and (iii) provide the Class Member with priority for the earliest available appointment for applications requiring an appointment.  Additionally, USCIS will administer or schedule the Oath of Allegiance for the Class Member at the next available opportunity."  Stip. ¶ 7.

[7]   The Stipulation provides that class members may request expedited processing by 1) calling the USCIS 1-800 number; 2) appearing in person at the local USCIS District Office; 3) including a written request with the application at the time of filing; or 4) sending a written request to the office at which the application was filed.  Stip. ¶ 17.

six-month mark is reached.  Id.  The applicant need not renew the
request at the six-month mark; instead, USCIS will act
automatically.  Id.  As part of expedited processing, USCIS will
notify the FBI of the need for priority processing of the FBI
name check.  Id. ¶ 19.  However, the FBI is not required to
accept more than 100 requests for priority processing from USCIS
per week.  Id.

     Class members who are granted expedited processing but
continue to experience delays may contact class counsel and take
advantage of the dispute resolution mechanism provided for by the
Stipulation.  Id. ¶¶ 42-46.

     The Agreement contains special provisions applicable to
a) class members whose benefits have already been terminated or
whose benefits will be terminated within six months and b) class
members whose seven-year eligibility will expire within one year.

a.   <u>Members who have lost benefits or will lose
benefits within six months</u>

     Within 60 days of the Effective Date of the Agreement,
the SSA will compile a mailing list of all class members whose
SSI benefits have been terminated or suspended pursuant to 8
U.S.C. § 1612(a)(2)(A) and all class members whose benefits may
be terminated or suspended prior to the June following the
Effective Date (collectively, "Terminated Members").  Stip. ¶ 20.
A letter will be sent to these Terminated Members within 75 days

-13-

of the Effective Date.  Id. ¶ 21.  The letter will encourage the class members to file applications for LPR or naturalization if they have not yet done so, will notify them of the availability of a fee waiver application and of the availability of expedited processing, and will provide contact information for class counsel.  Id.

Six months after this letter is sent, SSA will provide USCIS with a list of all Terminated Members whose benefits have not yet been restored.  Id. ¶ 23.  Within three months of receiving the list, USCIS will compare the data from SSA with its own database of pending applications and will expedite the processing of all Terminated Members' applications pending on the date of the data comparison.  Id.

b.    Members who will lose benefits within one year

The Agreement provides that the procedure described above will be repeated in May or June of 2008 in order to identify and expedite the applications of any class members who will face termination or suspension of benefits in the twelve-month period starting on July 1, 2008.  Id. ¶¶ 24-26.

4.   <u>Notification provisions</u>[8]

The Agreement provides that notification of the
availability of expedited processing will be provided to class
members in the form of press releases, announcements on SSA and
USCIS websites, distribution of information through USCIS's
Community Relations Program, display of notices in USCIS public
areas, and inclusion of the information in communications from
the SSA to class members.  <u>See</u> Stip. ¶¶ 27-28.

The Agreement also provides that USCIS will instruct
its own staff members of their responsibilities under the
Agreement.  <u>Id.</u> ¶¶ 29-30.

5.   <u>Effective and termination dates</u>

The Stipulation becomes effective on the date when all
of the following have occurred: a) entry of the Preliminary
Approval Order; b) approval by the Court of the Stipulation,
following notice to the class and a fairness hearing; and c)
entry of final judgment.  <u>Id.</u> ¶ 50.

The obligations of the stipulation terminate two years
and eleven months after the effective date.  <u>Id.</u> ¶ 54.

---

[8]     These provisions do not dictate how class members will
be notified of the proposed settlement; rather, they apply only
if the settlement receives final approval.

-15-

6.   <u>Attorneys' fees</u>

Defendants shall pay class counsel $275,000 in attorneys' fees.  This amount is in settlement of all claims for attorneys' fees and costs.  Defendants shall bear any costs incurred in connection with notifying the class of the terms and conditions of the Stipulation.  <u>Id.</u> ¶ 56.


B.   <u>Conditional Class Certification</u>

A class may be certified under Federal Rule of Civil Procedure 23 only if all four requirements of Rule 23(a) are met and if the class satisfies one of the three criteria of Rule 23(b).  This requirement applies equally regardless of whether the class is being certified for settlement or litigation purposes.  <u>In re G.M.</u>, 55 F.3d at 794-95.  Moreover, when reviewing a proposed settlement of a class action, a court must determine whether the proposed class satisfies Rule 23(a) and (b) independently of the evaluation of the settlement's fairness that the court will conduct under Rule 23(e).  <u>In re Cmty. Bank of N. Va.</u>, 418 F.3d 277, 299 (3d Cir. 2005).

In evaluating whether a proposed settlement class should be certified, "the court may take the terms of the proposed settlement into consideration.  The central inquiry, however, is the adequacy of representation."  <u>Cmty. Bank</u>, 418 F.3d at 300 (citing <u>In re Prudential Ins. Co. Am. Sales Practice</u>

-16-

Litig. Agent Actions, 148 F.3d 283, 308 (3d Cir. 1998)).  The
question is "whether a proposed class has sufficient unity so
that absent members can be fairly bound by decisions of class
representatives."  Id. (citing Amchem Prods., Inc. v. Windsor,
521 U.S. 591, 621 (1997)).

Defendants initially opposed class certification;
however, the opposition became moot because the motion for
certification was denied without prejudice when the parties
entered settlement negotiations.  Regardless, the Court has an
independent duty to determine whether certification is
appropriate under Rule 23.  Cmty. Bank, 418 F.3d at 299.
Arguments raised by the defendants will be considered as part of
this determination.

1.   Rule 23(a)

Rule 23(a) provides that a class may be certified only
if the following four requirements are met: 1) "the class is so
numerous that joinder of all parties is impracticable"; 2) "there
are questions of law or fact common to the class"; 3) "the claims
or defenses of the representative parties are typical of the
claims or defenses of the class"; and 4) "the representative
parties will fairly and adequately protect the interests of the
class."  Fed. R. Civ. P. 23(a).

a.   <u>Numerosity</u>

It is indisputable that the proposed class meets the requirement of numerosity.[9]  The class contains over 5,500 immigrants who lost their SSI benefits between 1998 and December 2005.  It also contains approximately 46,780 immigrants who, in the estimation of the Social Security Administration, are likely to lose their SSI due to delays in the naturalization process. Thus, the class totals over 50,000 people, easily a class "so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a); <u>see</u> <u>Cmty. Bank</u>, 418 F.3d at 303 (recognizing that class of 44,000 easily satisfies numerosity requirement).

b.   <u>Commonality</u>

"[T]he commonality standard of Rule 23(a)(2) is not a high bar; it does not require identical claims or facts among class members, as 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class.'"  <u>Chiang v. Veneman</u>, 385 F.3d 256, 265 (3d Cir. 2004) (quoting <u>Johnston v. HBO Film Mgmt.</u>, 265 F.3d 178, 184 (3d Cir. 2001)).  "[F]actual differences among the claims of the putative class members do not defeat certification."  <u>Prudential</u>, 148 F.3d at 310.

---

[9]     In defendants' initial opposition to class certification, defendants did not challenge the numerosity of the class.

The commonality requirement is satisfied in this case because the named plaintiffs share at least one question of law in common with the other class members.  The question raised by each class member is whether USCIS's unequal application of Memorandum 22, which results in varying processing times across the nation, violates the Equal Protection Clause.

The named plaintiffs also share questions with the class members regarding the claim under the APA.  For example, the question of whether the FBI has a mandatory, non-discretionary duty to conduct background checks on naturalization and LPR applicants is a question of law common to all class members.  The requirement imposed by the APA that USCIS and the FBI complete their mandatory duties in "reasonable" periods of time is relevant to each class member's claim.  The claims appear to vary in strength–a class member who waited longer for processing has a stronger argument that the wait was unreasonable.  However, commonality does not require identical facts among class members; the commonality requirement is satisfied by the common questions of law and of fact presented in this case.

c.   Typicality

"The typicality requirement is designed to align the interests of the class and the class representatives so that the

latter will work to benefit the entire class through the pursuit of their own goals." Prudential, 148 F.3d at 311.  Like the commonality requirement, typicality does not mandate that named plaintiffs and class members have identical claims.  Id. "'[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." Id. (quoting Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994)); Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985) (describing typicality as "an inquiry whether the named plaintiff's individual circumstances are markedly different" from those of the class members).

        Claims of the named plaintiffs are typical of those of the class members.  Plaintiffs allege an equal protection violation stemming from "an intentional decision to expedite applicants in some offices, but not other applicants in other offices, under Memorandum 22." Kaplan, 481 F. Supp. 2d at 396. Although this decision affects class members to differing degrees, all the claims involve a single practice of intentionally allowing some offices to implement Memorandum 22 while others ignore it.  Cf. Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) (Becker, J.) ("Challenges to a program's compliance with the mandates of its enabling legislation, even where plaintiff-beneficiaries are differently impacted by the

violations, have satisfied the commonality requirement.").

In their initial opposition to class certification, defendants argued that the named plaintiffs' claims are not typical of the class's claims for three reasons: first, some named plaintiffs did not apply for naturalization until after their SSI benefits had already expired; second, some named plaintiffs, those who are asylees, are barred from bringing a claim against USCIS for unreasonable delay by the settlement in Ngwanyia v. Ashcroft, 376 F. Supp. 2d 923 (D. Minn. 2005). Finally, defendants state that one named plaintiff, Tasim Mandija, was "arguably the recipient of a processing error regarding the submission of fingerprints - an error which is not amenable to class treatment." Defs.' Opp. Class Cert. 17 (doc no. 37), March 19, 2007.

These arguments do not defeat typicality. First, the equal protection claim of named plaintiffs and class members does not depend on whether an application for naturalization was made before or after SSI benefits were terminated. Memorandum 22 makes expedited processing available to "[n]aturalization applicants who have lost or who are facing loss of federal means-tested benefits due to welfare reform legislation." Ex. B, First Am. Cmpl. (doc. no. 11). USCIS does not differentiate between applicants who lost benefits before applying and those who lost benefits after applying. All applicants who lost or will lose

-21-

benefits are equally entitled to expedited processing.  The equal
protection claim is identical regardless of when the benefit loss
occurred.

Second, the Court has already held that the claims of
the asylee-plaintiffs are not precluded by the settlement in
Ngwanyia.  Kaplan, 481 F. Supp. 2d at 402-04.  Thus, the asylee-
plaintiffs stand on no different footing than other plaintiffs
who were not part of the class in Ngwanyia.

Third, and finally, defendants' argument that Mr.
Mandija's claim is not typical of the claims of class members
appears incorrect.  The First Amended Complaint alleges that Mr.
Mandija applied for LPR status in February 2000.  Defendants did
not act upon the application until February 2006, when they
denied the application claiming not to have Mr. Mandija's
fingerprints.  In August 2006, defendants recognized that the
denial may have been erroneous, reopened the application and took
a new set of fingerprints.  According to the complaint, Mr.
Mandija's application is still pending.  Defendants argue that a
claim arising from USCIS's error is not amenable to class
treatment.  This may be true, but the class claims address delay
in processing applications, not errors in processing those
applications.  Even if USCIS was correct to deny Mr. Mandija's
application in February 2006, surely the 6-year delay between
February 2000 and February 2006 constitutes the type of delay (or

-22-

lack of expedited processing) that is the focus of the class claims in this case.

### d. Adequacy of representation

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requires a determination of (1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 185 (3d Cir. 2001). The effort to "uncover conflicts of interest between named parties and the class they seek to represent," Prudential, 148 F.3d at 312, takes on particular importance in the context of settlement-only certification where "collusion, inadequate prosecution, and attorney inexperience are the paramount concerns," Cmty. Bank, 418 F.3d at 299. Indeed, "the key" to Amchem's teaching on settlement-only classes "appears to be the careful inquiry into adequacy of representation." Prudential, 148 F.3d at 308.

### i. Alignment of plaintiffs' interests

"[E]valuating the settlement can yield some information relevant to the adequacy of representation determination under 23(a)(4). The settlement evaluation involves two types of evidence: a substantive inquiry into the terms of the

-23-

> settlement relative to the likely rewards
> of litigation and a procedural inquiry
> into the negotiation process."

In re G.M., 55 F.3d at 796.  "The focus on the negotiation

process results from the realization that a judge cannot really

make a substantive judgment on the issues in the case without

conducting some sort of trial on the merits, exactly what the

settlement is intended to avoid."  Id. (citing Malchman v. Davis,

706 F.2d 426, 433 (2d Cir. 1983)).  "Instead, the court

determines whether negotiations were conducted at arms' length by

experienced counsel after adequate discovery, in which case there

is a presumption that the results of the process adequately

vindicate the interests of the absentees."  Id.

Here, it does not appear that the interests of the

named plaintiffs conflict with those of the absent class members.

As described above, all plaintiffs have suffered, or are at risk

from, the same course of conduct by defendants: a practice of

unevenly enforcing Memorandum 22 and of unreasonably delaying

action on applications for naturalization.  Although different

plaintiffs may have suffered different degrees of injury

depending on the length of delay in a particular case, these

differences are immaterial since plaintiffs seek declaratory and

injunctive relief rather than money damages.  All plaintiffs will

benefit equally from the proposed settlement, which entitles any

applicant in danger of losing benefits to expedited treatment.

-24-

Moreover, the substance of the settlement suggests that the named plaintiffs have adequately represented the interests of the absent class members.  The Agreement creates a process which will be available to all class members.  To the extent that the Agreement treats different class members differently, it prioritizes the processing of applications in order of when benefits will be lost.  This prioritization appears fair and reasonable.  All the applications of the class members cannot be processed simultaneously.  The prioritization proposed in the Agreement will help those who have already lost benefits, while enabling those in danger of doing so to avoid the loss by seeking expedited processing as the loss approaches.

In comparison to the risk and expense of litigation, the Agreement appears a reasonable choice to protect the interests of all class members.  Even if plaintiffs litigated the case and won, the outcome would likely be that USCIS would expedite their applications.  Because some ordering of the expedited applications would be necessary even following a victory for plaintiffs, it seems likely that the settlement approximates a likely result if plaintiffs succeed in litigating the case to completion.

In addition to being substantively fair, the settlement appears to be the product of arm's-length negotiations between counsel.  The case was litigated for almost a year before

-25-

settlement was reached.  Some discovery was conducted.  The
motion for approval of the settlement states that there are no
side agreements in connection with the settlement.

### ii.  Qualifications of counsel

Plaintiffs are represented by Community Legal Services;
Ballard, Spahr, Andrews & Ingersoll, LLP; HIAS and Council
Migration Service of Philadelphia; and the Sargent Shriver
National Center on Poverty Law.  Class counsel appear well-
qualified and sufficiently experienced to represent the named
plaintiffs and the class members.  Defendants did not challenge
the qualifications of counsel in their initial opposition to
certification.

### 2.  Rule 23(b)(2)

Rule 23(b)(2) allows certification of the class if "the
party opposing the class has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate
final injunctive relief or corresponding declaratory relief with
respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).
"[T]his requirement is almost automatically satisfied in actions
primarily seeking injunctive relief."  Baby Neal, 43 F.3d at 58.

Plaintiffs here seek a declaration that the defendants'
failure to act on plaintiffs' applications for LPR and

naturalization in a timely fashion constitutes unreasonable delay
in violation of the APA.  They also seek an injunction requiring
USCIS and the FBI to promptly process all applications, including
expediting applications from applicants who have lost SSI
benefits or are threatened with such a loss.

Because of the relief sought, this action "almost
automatically" satisfies the requirement of Rule 23(b)(2).
Moreover, the requirement is satisfied because defendants'
conduct toward all plaintiffs is governed by the same legal
regime and defendants' failure to act is based on grounds
applicable to the whole class: uneven enforcement of Memorandum
22 and failure to act promptly on applications.  Some members of
the class may not have been injured by defendants' equal
protection violation (for example, if the class member applied in
an office that enforces Memorandum 22); however, "the language of
(b)(2) does not even require that the defendant's conduct be
directed or damaging to every member of the class."  Baby Neal,
43 F.3d at 58.

Because the proposed settlement class satisfies Rule
23(b)(2) and all four requirements of Rule 23(a), the Court will
grant conditional certification.


    C.   Preliminary Approval of the Proposed Settlement
             "[I]f the proposed settlement appears to
         be the product of serious, informed, non-

-27-

> collusive negotiations, has no obvious
> deficiencies, does not improperly grant
> preferential treatment to class
> representatives or segments of the class,
> and falls within the range of possible
> approval, then the [C]ourt [will] direct
> that . . . notice be given to the class
> members of a formal fairness hearing."

Schwartz, 157 F. Supp. 2d at 570 n.12.  The "range of possible

approval" is set by Girsh v. Jepson, which enumerates nine

factors to be considered by courts assessing the fairness of a

settlement under Rule 23(e).  These factors are: 1) the

complexity, expense and likely duration of the litigation; 2) the

reaction of the class to the settlement; 3) the stage of the

proceedings and the amount of discovery completed; 4) the risks

of establishing liability; 5) the risks of establishing damages;

6) the risks of maintaining the class action through the trial;

7) the ability of the defendants to withstand a greater judgment;

8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and 9) the range of reasonableness of

the settlement fund to a possible recovery in light of all the

attendant risks of litigation.  521 F.2d 153, 157 (3d Cir. 1975).

Preliminary approval of the proposed settlement will be

granted.  As noted above, the settlement agreement appears to be

the product of arm's-length negotiations by experienced counsel.

The agreement has no obvious deficiencies.  Because it provides

injunctive relief in the form of a process that is available to

all class members, the settlement does not provide preferential

-28-

treatment to named plaintiffs or a subclass of plaintiffs;
rather, it provides equal benefits to all class members.

Finally, a number of the <u>Girsh</u> factors suggest that the
settlement will receive final approval.  First, the case has
already been litigated for over a year; there has been
significant motion practice and some discovery has been
conducted.  Second, as described above, there are risks inherent
in proceeding to trial and, even if plaintiffs succeed at trial,
they would likely be entitled only to injunctive relief that
would have similar results to the proposed settlement.  Third,
the injuries suffered by plaintiffs result from delays in the
processing of their applications.  Thus, it is in the interests
of the plaintiffs to settle the case in order to prevent the
further delay and injury that would result from continuing with
the case.

Because the settlement appears likely to secure final
approval under Rule 23(e), the Court will schedule a fairness
hearing and order that notice be given to the class members.

III. MOTION FOR APPROVAL OF NOTICE TO CLASS MEMBERS

Rule 23(e) provides that "[t]he court must direct
notice in a reasonable manner to all class members who would be
bound by the proposal."  Fed. R. Civ. P. 23(e).  "The court
should consider both 'the mode of dissemination and its content

to assess whether notice was sufficient.'" <u>Bradburn Parent
Teacher Store, Inc. v. 3M</u>, 513 F. Supp. 2d 322, 328 (E.D. Pa.
2007) (quoting <u>In re Diet Drugs (Phentermine, Fenfluramine,
Dexfenfluramine) Prods.</u>, 226 F.R.D. 498, 517-18 (E.D. Pa. 2005)).

 

> A.   <u>Content of the Notice</u>

       "'Rule 23(e) notice is designed to summarize the
litigation and the settlement and to apprise class members of the
right and opportunity to inspect the complete settlement
documents, papers, and pleadings filed in the litigation.'" <u>In
re Bristol-Myers Squibb Sec. Litig.</u>, No. 06-2964, 2007 WL
2153284, at *2 (3d Cir. 2007) (unreported) (quoting <u>Prudential</u>,
148 F.3d at 327)).  "Although the 'notice need not be unduly
specific, . . . the notice document must describe, in detail, the
nature of the proposed settlement, the circumstances justifying
it, and the consequences of accepting and opting out of it.'
<u>Bradburn</u>, 513 F. Supp. 2d at 328 (quoting <u>Diet Drugs</u>, 226 F.R.D.
at 518).

       In <u>Prudential</u>, the Court approved a settlement notice
that contained

> "a description of the litigation, the
> settlement class, and the terms of the
> proposed settlement, including the relief
> available.  It set out the information
> regarding the fairness hearing, including
> the date of the hearing, the opportunity
> for class members to appear at the
> hearing, and the procedure for filing

> objections with the court. The notice
> also explained the consequences for class
> members who remain in the class and
> provided the full text of the release.
> Finally, the notice provided class
> members with the toll-free 800 number
> established by Prudential to address
> class member concerns."

148 F.3d at 327.

The proposed notice in this case is very similar to the notice in Prudential and other notices that have been approved in this district.  See, e.g., Bradburn, 513 F. Supp. at 329 (approving settlement notice that summarized "the consequences of class membership" and directed class members to a website for further information).  It describes the litigation, defines the class and explains the settlement, describing available relief in detail.  The notice explains the fairness hearing and describes how class members can file objections.  It provides contact information so that class members can write to class counsel with questions.[10]  Although the notice does not provide the full text of the release, it notifies class members that they release all "settled claims" against the defendants.  It further directs them to a website where they can read the Settlement Agreement,

---

[10]    Although the proposed notice originally submitted to the Court contained an 800-number, counsel agreed at the January 18, 2008 hearing that the 800-number would be removed from the notice.  1/18/08 Hr'g. Tr. 19:5-12.  It was also agreed that an instruction will be added telling class members that they should contact class counsel, not the Court, regarding the fairness hearing.  Id. at 19:25-20:2.

including the release, in full.

Because the notice adequately informs class members of the litigation, the proposed settlement and their right to inspect the full settlement agreement and the other documents in the case, the Court will approve the notice proposed by the parties with the slight modifications discussed at the January 18 hearing, see supra n.7.

B.   Method of Distributing Notice

Rule 23(e) requires that class members be given "reasonable" notice of the settlement.  In cases certified under Rule 23(b)(2), as this one was, "the stringent requirement of Rule 23(c)(2) that members of the class receive the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts,' is inapplicable."  Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 962 (3d Cir. 1983).  "Rule 23(e) makes some form of post-settlement notice . . . mandatory, although the form of notice is discretionary . . . [because] Rule . . . (b)(2) classes are cohesive in nature."  Id. at 962-63 (citing Wetzel v. Liberty Mut. Cas. Co., 508 F.2d 239, 248-50 (3d Cir. 1975)).  "[A]n adequate class representative can, as a matter of due process, bind all absent class members by a judgment."  Id. at 963.

Individual notice is not required although "individual

notice is appropriate, for example, if class members are required to take action-such as filing claims-to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(1) adv. comm. note.

The parties propose to distribute notice of the proposed settlement in the following ways: 1) posting the Notice in appropriate places on the USCIS and SSA public websites and 2) providing the Notice to the USCIS Community Relations Program for distribution within five business days of the date of the Court's order approving the Notice.  Notice will be distributed by the Community Relations Program to "the existing network of community-based and non-profit organizations who provide advice and assistance to immigrants, including AILA chapters through the AILA national office."  Joint Mot. for Prelim. Approval 4, Jan. 4, 2008 (doc. no. 71).

Distribution by the Community Relations Program will "bring the proposed settlement to the attention of representative class members who may alert the court to inadequacies in representation, or conflicts in interest among subclasses." Walsh, 726 F.2d at 963.  The organizations that receive the notice are well-positioned to spread information regarding the settlement to their clients by posting the notice in their facilities or on their websites.

At the January 18 hearing, the Court inquired about the

possibility of sending individual notice to the class members.
1/18/08 Hr'g. Tr. 16:20-23.  Although individual notices could be
sent using the SSA databases, doing so would require that the
databases be searched so that a list of all aliens who are or
were receiving SSI benefits could be generated.  Counsel for the
Government advised the Court that this process would take around
three months.  Id. at 17:10-11.  Because of the time-sensitive
nature of this case, a three-month delay would result in many
more class members losing SSI benefits or remaining without
benefits while individual notices were generated.  Moreover, the
distribution method proposed by the parties appears well-
calculated to reach representative class members who will be able
to bring any deficiencies in the settlement to the Court's
attention.  Therefore, the Court will approve the distribution
method proposed by the parties.


IV.  CONCLUSION

        For the reasons stated above, the Court will grant
conditional class certification and preliminary approval of the
proposed settlement.  The Court will also approve the proposed
notice and method of distributing notice.  An appropriate order
follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHMUL KAPLAN ET AL.,          :    CIVIL ACTION
                              :    NO. 06-5304
          Plaintiffs,         :
                              :
     v.                       :
                              :
MICHAEL CHERTOFF ET AL.,      :
                              :
          Defendants.         :

## ORDER

**AND NOW**, this 24th day of January 2008, it is hereby **ORDERED** that the joint motion for preliminary approval of the proposed settlement and approval of notice to the class members (doc. no. 71) is hereby **GRANTED**.[11]  The class is conditionally certified under Rule 23(b)(2) for settlement purposes only.

It is further **ORDERED** that there will be a hearing to consider whether the proposed settlement should receive final approval under Federal Rule of Civil Procedure 23(e) on **Friday, February 29, 2008 at 10:30 a.m.** in Courtroom 11A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

**AND IT IS SO ORDERED.**

**S/Eduardo C. Robreno**

**EDUARDO C. ROBRENO, J.**

---

[11]   The proposed notice is approved with the slight changes that were agreed to on the record at the hearing on January 18, 2008.

-35-